UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOUAD SAAD,

    Plaintiff,

vs.                                                                                      Case No. 11-15590

WAYNE COUNTY REGISTER OF DEEDS,                HON. AVERN COHN
JP MORGAN CHASE BANK, N.A., FEDERAL
HOME LOAN MORTGAGE CORPORATION,

    Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
## (Doc. 5)[1]
## AND DISMISSING CASE

### I. Introduction

This is another of one of many cases pending in this district involving a default on a mortgage and the subsequent foreclosure. Plaintiff Fouad Saad is suing the Wayne County Register of Deeds,[2] Federal Home Loan Mortgage Corporation (Freddie Mac), and JPMorgan Chase Bank. N.A. (Chase). Before the Court is Freddie Mac and Chase's (collectively, defendants') motion to dismiss under Fed. R. Civ. P. 12(b)(6). For

---

[1]The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]To date, the Wayne County Register of Deeds has not been served or otherwise appeared in the case. As explained in defendants' removal papers, the Wayne County Register of Deeds is merely a repository of deeds and can take no action against any interest plaintiff attempts to assert in this case. Moreover, while the Wayne County Register of Deeds is a Michigan governmental agency, defendants properly removed the case to federal court inasmuch as the Register of Deeds is at best a nominal party and likely fraudulently joined. Plaintiff also has not contested the removal or the Court's diversity jurisdiction.

the reasons that follow, the motion will be granted. This case will be dismissed.

## II. Background

### A. The Note and Mortgage

On or about August 24, 2007, plaintiff obtained a loan in the amount of $100,000.00 from Washington Mutual Bank to purchase real property located at 3361 Chestnut, Dearborn, Michigan. The loan is evidenced by a promissory note signed by the parties, with plaintiff as borrower and Washington Mutual Bank as lender. To secure the indebtedness due under the note, plaintiff granted Washington Mutual Bank a mortgage interest on the property. The mortgage was recorded with the Wayne County Register of Deeds on September 14, 2007, Liber 49248, Pages 938-945. Chase later assumed the obligations of Washington Mutual, including Washington Mutual's interest relative to plaintiff's loan.

Plaintiff had difficulty making the mortgage payments due under the loan. In July of 2010, Chase wrote to plaintiff regarding a possible loan modification under the federal Home Affordable Modification Program (HAMP). The letter instructed plaintiff to call a number to get the process started. The letter explained the process as follows:

- We will send you a Modification Information Packet

- The packet will include some forms for your to fill out, and a short list of documentation you'll need to provide–like tax and income documentation, and information about any financial hardship you are experiencing.

- You will need to complete, sign and return the information to begin the evaluation process.

Once we review all of your documentation, we'll determine if you are eligible for the program. If you are, we'll send you a letter with details about your new, affordable mortgage payment–and you will start paying

> that new amount during a trial period. If you make those trial payments on time and fulfill all of the other program conditions, we will offer you a permanent modification to keep your payments low.
>
> A modification may involve some or all of the following: bringing your account current, reducing your interest rate, extending the term and/or delaying your repayment of a portion of the principal until the end of the loan.

At the same time, on July 6, 2010, Chase, through its agent, the law firm of Trott & Trott, notified plaintiff that he was in default on his mortgage obligation for "non-payment." The letter states that plaintiff may contact a housing counselor and request a meeting with the agent "to attempt to work out a modification of the mortgage loan to avoid foreclosure . . . ." The letter also states that "[i]f you and the agent ... reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if you abide by the terms of the agreement." Chase also sent plaintiff another letter on July 6, 2010 which was a formal notice of foreclosure proceedings required by M.C.L. § 600.3025. That letter also noted plaintiff's indebtedness of $161,042.88, including the principal, unpaid interest, and other associated charges.

Plaintiff alleges he faxed a loan packet to Chase. Attached to the complaint and his response to defendants' motion are fax "transmission logs" which appear to show plaintiff faxed information to Chase in August and September of 2010 and in January of 2011.

However, plaintiff did not receive a loan modification either with Chase under HAMP or by speaking with Trott & Trott.

### B.  Foreclosure Proceedings

Meanwhile, because the loan was not modified, Chase, through Trott & Trott, began foreclosure by advertisement.  To this end, Chase published in the Detroit Legal News for four consecutive weeks on August 3, August 10, August 17, and August 24, 2010 and posted a notice of foreclosure sale on the Property on August 5, 2010.

On or about June 15, 2011, a sheriff's sale was held where Freddie Mac purchased the property for $180,546.23.  The sheriff's deed was subsequently recorded with the Wayne County Register of Deeds on June 28, 2011, in Liber 49248, Pages 938-945.  Plaintiff failed to redeem within the six month redemption period, which expired on December 15, 2011.

### C.  Court Proceedings

Plaintiff filed a complaint in Wayne County Circuit Court on December 13, 2011, two days prior to the expiration of the redemption period, seeking to set aside the sale.  On December 14, 2011, a state court judge issued a temporary restraining order enjoining defendants from, among other things, "conducting any foreclosure proceedings in connection with the property . . . eviction proceedings . . . until further order of the court."  The order set a show cause hearing for December 22, 2011.

However, on December 21, 2011, defendants removed the case to federal court on the grounds of diversity jurisdiction.

On January 23, 2012, defendants filed the instant motion to dismiss.  (Doc. 5).  Plaintiff filed a response to the motion on March 14, 2012 (Doc. 8).  Thereafter, the parties agreed to stay the case pending a decision from the Michigan Supreme Court in Kim v. JP Morgan Chase Bank and in order to explore settlement.  On October 9, 2012, the Court entered an order staying the case.  (Doc. 13).  On May 15, 2013, the Court

4

lifted the stay because (1) the Michigan Supreme Court issued a decision in Kim and (2) the parties had not settled the case. (Doc. 14). Defendants filed a reply to their motion on June 12, 2013 (Doc. 15).

The complaint does not contain discrete counts. However, a fair reading reveals that plaintiff is alleging contract, fraud, and misrepresentation claims.

### III. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949

(internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). See also Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999)

Specifically in contract cases such as this, "if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. QQC, Inc. v. Hewlett-Packard Co., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997)). A court is also entitled to consider matters of public record without converting the motion to one for summary judgment. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007).

Here, the Court has considered documents relating to the mortgage, loan modification process, and the foreclosure which are referenced in the complaint and central to plaintiff's claims.

## IV. Analysis

### A. Expiration of the Redemption Period

Before addressing plaintiff's claims that relate to the foreclosure proceedings, it is undisputed that plaintiff failed to exercise his statutory right to redeem the foreclosed before the six-month statutory redemption period expired. As the Court of Appeals for the Sixth Circuit and Michigan Supreme Court recently observed, this fact has

significant consequences.

"[U]nder Michigan's foreclosure statute, 'all the right, title and interest which the mortgagor had at the time of the execution of the mortgage' vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period." El-Seblani v. IndyMac Mortg. Servs., No. 12-1046, 2013 WL 69226, *3 (6th Cir. Jan. 7, 2013) (quoting Mich. Comp. Laws § 600.3236 and citing Piotrowski v. State Land Office Bd., 4 N.W.2d 514, 517 (Mich. 1942), as support). "A strict reading of the statute suggests that once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate." Id.

Michigan courts do, however, "allow 'an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice' in order to keep a plaintiff's suit viable, provided he makes 'a clear showing of fraud, or irregularity' by the defendant." Id. (quoting Schulthies v. Barron, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). "The misconduct must relate to the foreclosure procedure itself." Id. "Moreover, because the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought 'promptly and without delay.'" Id. (quoting Richard v. Schneiderman & Sherman, PC, 818 N.W.2d 334, 337 (Mich. Ct. App. 2011), rev'd on other grounds, 807 N.W.2d 325 (Mich. 2012)). Thus, plaintiff can bring an action to challenge the foreclosure proceedings after the expiration of the redemption period. The scope of relief, however, is circumscribed, as explained below.

### B. Setting Aside the Foreclosure

To the extent plaintiff says that the foreclosure sale of the property should be

declared void ab initio, the argument is not well-taken. In Kim, the Michigan Supreme Court held that under Michigan law a failure to comply with the requirements of Michigan's foreclosure by advertisement statute renders the foreclosure voidable, not void ab initio. See Kim v. JPMorgan Chase Bank, N.A., 493 Mich. 98, 115–16 (2012) (reviewing Davenport v. HSBC Bank USA, 739 N.W.2d 383, 384 (Mich. Ct. App. 2007), the decision the Sixth Circuit relied upon for its contrary holding in Mitan v. Fed. Home Loan Mortg. Corp., ___ F.3d ___, 2012 WL 6200257 (6th Cir. Dec. 12, 2012), and holding that "Davenport's holding was contrary to the established precedent of [the Michigan Supreme] Court."). Thus, under controlling Michigan law, the foreclosure sale cannot be declared void ab initio. See Savedoff v. Access Group, Inc., 524 F.3d 754, 762 (6th Cir. 2008) (observing that federal courts must follow the decisions of the state's highest court when applying state law). So, the issue this Court must now address is whether, under Michigan law, the foreclosure sale on the property is voidable, or could be set aside, on the facts alleged.

The Michigan Supreme Court's decision in Kim instructs on this issue as well. "[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [Michigan's foreclosure by advertisement statute]." Id. "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." Id. The Concurring Opinion by Justice Markman provides further guidance "concerning the nature of the 'prejudice' that plaintiffs must demonstrate in order to set aside the foreclosure;" and, in that regard, provides a nonexhaustive list of factors to be considered. Id. at 120–21. These include: (1) "whether plaintiffs were misled into

8

believing that no sale had been had;" (2) "whether plaintiffs act[ed] promptly after [becoming] aware of the facts on which they based their complaint;" (3) "whether plaintiffs made an effort to redeem the property during the redemption period;" (4) "whether plaintiffs were represented by counsel throughout the foreclosure process;" and (5) "whether defendant relied on the apparent validity of the sale by taking steps to protect its interest in the subject property." Id. (Markman, J. concurring) (internal quotation marks and citations omitted).

Applying Kim, plaintiff cannot establish the prejudice required to set aside the foreclosure sale of the property. This is so because none of plaintiff's claims relating to the mortgage and the foreclosure proceedings are viable, as explained below.

### C. Plaintiff's Claims

#### 1. Contract Claim

#### a. Statute of Frauds

Plaintiff essentially alleges that Chase assured him that he could get a loan modification, and that his home would not be foreclosed on while they pursued a modification. To the extent plaintiff is claiming he had a contract for a loan modification,[3] such a claim is barred by the statute of frauds.

---

[3]To the extent plaintiff claims a violation of Michigan's loan modification statute, M.C.L. § 600.3205a, such a claim fails. The Sixth Circuit has held that the loan modification statute provides a remedy which must be exercised prior to a foreclosure by advertisement. See Smith v. Bank of Am. Corp., 485 F. App'x 749, 751 (6th Cir. 2012) (stating that plaintiff's "appear to have missed the boat regarding the applicability of this statute which, when triggered, allows plaintiffs to enjoin a foreclosure by advertisement and convert it to a judicial foreclosure: they brought this action after the foreclosure sale occurred, and so there is no foreclosure to enjoin or convert." Id. (citing M.C.L.§ 600.3205c). The holding in Smith is consistent with the opinions of courts in this district that have considered the issue. See, e.g., Benford v. CitiMortgage, Inc.,

9

In Michigan, certain types of agreements must be in writing before they can be enforced. Crown Technology Park v. D&N Bank, F.S.B., 242 Mich. App. 538, 548 (2000). The burden of proving an enforceable agreement is even heavier when claiming against a financial institution. Specifically, M.C.L. § 566.132(2) provides, in relevant part, that an action cannot be brought against a financial institution to enforce any "financial accommodation," unless the promise or commitment "is in writing and signed with an authorized signature by the financial institution." In Crown Technology, the plaintiff sued the bank to enforce an alleged unwritten promise by the bank to waive a prepayment penalty provision in the plaintiff's mortgage loan. The court of appeals held that section 132(2) barred the plaintiff's promissory estoppel claim, stating that section 32(2) "plainly states that a party is precluded from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise to waive a loan provision." Id. at 550. In reaching its conclusion, the court of appeals noted that its

---

2011 WL 5525942, at *5 (E.D. Mich. Nov. 14, 2011) ("The statute plainly requires the borrower to seek his remedy prior to the completion of the foreclosure sale, as it merely converts the proceeding into one of judicial foreclosure. A borrower may not challenge a completed foreclosure sale under this statute."); Evan v. BAC Home Loan Servicing LP, 2012 WL 4867753, at *2 (E.D. Mich. Oct. 15, 2012) ("Failure to comply with Mich. Comp. Laws. § 600.3205(a) does not invalidate a Sheriff's Sale."); Smith v. Fannie Mae, 2012 WL 3758087, at *6 (E.D. Mich. Aug. 30, 2012) ("Under 600.3205(c)(1)-(3), [plaintiff] was required to act before the foreclosure by Sheriff's Sale commenced in order to convert the proceedings to a judicial foreclosure."); Dingman v. OneWest Bank, FSB, 859 F. Supp. 2d 912, 922 (E.D. Mich. 2012) ("[A] failure to comply with these statutes would not invalidate a Sheriff's sale. The statutes include a specific enforcement mechanism that provides the borrowers with an opportunity to request judicial foreclosure if the foreclosing party does not comply with the loan modification provisions.") (citation omitted). See also Jonathan L. Engman, Challenging the Loan Modification Process Under Michigan's Foreclosure Statute, LACHES, June 2013, at 23

ruling extended beyond promissory estoppel claims, and that §132(2) barred all unwritten promises, regardless how such claims were labeled, explaining:

> However, as we noted above, the Legislature used the broadest possible language in M.C.L. § 566.132(2); M.S.A. 26.922(2) to protect financial institutions by not specifying the types of "actions" it prohibits, eliminating the possibility of creative pleading to avoid the ban.

Id. at 551.

The gravamen of all of plaintiff's fraud allegations is that Chase assured plaintiff that he would get a loan modification, that he should not make payments during this time, and that no foreclosure proceedings will take place. These alleged assurances were all verbal. M.C.L. 566.132(2) bars plaintiff's fraud claims because plaintiff has not alleged the existence of any documentary evidence signed by an authorized representative of Chase indicating that they would receive a financial accommodation in the form of a loan modification. Because plaintiffs' fraud claims would require the Court to enforce alleged oral promises and representations in contravention of the statute of frauds, plaintiff has not stated a plausible fraud claim.

Moreover, plaintiff's reliance on the letters from Chase regarding a loan modification as support for a fraud clam is misguided. The letters on their face do not promise a loan modification. As set forth above, in one letter it is made clear that only if a modification is approved will plaintiff get relief. Until and unless that happened, which it did not, plaintiff's obligation under the note and mortgage remained intact.

Another judge in this district faced a similar argument, and likewise concluded that the plaintiff/homeowner's claim regarding a promised loan modification was barred by the statute of frauds. The court explained:

> Here, by contrast, Defendants' letter merely stated that a loan modification "may" be possible. (Compl. Ex.2.) The letter further stated that Defendants "want to work with [Plaintiff] to get [his] loan current again." (Id.) Unlike in White, none of the language contained in the loan modification mailing suggests objective intent to contract. Rather, Defendants clearly used noncommittal language. Regardless of whether the letter's closing constitutes a signature sufficient to satisfy the statute of frauds, the language used in the letter does not objectively demonstrate the assent necessary to form a binding contract; the letter only uses precatory, conditional language. Kamalnath v. Mercy Mem. Hosp. Corp., 194 Mich.App. 543, 487 N.W.2d 499, 503 (Mich. Ct. App.1992). Moreover, the loan modification form returned by Plaintiff was not signed by Defendants. Accordingly, since Plaintiff seeks to enforce a commitment regarding credit modification, there is insufficient evidence to meet the statute of frauds. Mich. Comp. Laws § 566.132(2)(b). Therefore, dismissal of Plaintiff's claim is appropriate. Fed.R.Civ.P. 12(b)(6).

Vittands v. Bank of America, NA, 2102 WL 1696708, *4 (E.D. Mich. May 15, 2012).

Here, as in Vittands, none of the documents evidence a binding contract for a loan modification. There is no writing signed by any authorized representative of Chase evidencing any agreement to modify plaintiff's loan, to stay foreclosure, or waive plaintiff's obligations to make his mortgage payment. His claim is barred by the statute of frauds.

### b. Overcoming the Statute of Frauds

Plaintiff's arguments seeking to overcome application of the statute of frauds do not carry the day. First, plaintiff's reliance on Schuler v. Wells Fargo Home Mortgage, Inc., 2011 WL 2470125 (E.D. Mich. June 20, 2011) is misplaced. In Schuler, the plaintiffs received essentially a loan modification approval letter and also send in payments relying on the loan modification. The district court found that plaintiffs' allegations were sufficient to overcome the statute of frauds at the dismissal stage. Here, by contrast, the loan modification documents plaintiff received did not form a binding contract nor did plaintiff make any payments in reliance on the existence of a

valid loan modification agreement.

Second, plaintiff argues that he may avoid application of the statute of frauds due to part performance. Plaintiff is mistaken. He has not alleged or established what act constituted his part performance. See Barclae v Zarb, --- N.W.2d ---, 2013 WL 1629223 (Mich. Ct. App. 2013) ("Because plaintiffs can cite to no provision of the 'agreement' that they performed, their claim of partial performance must fail."). Moreover, part performance is not sufficient to remove a claim from the statute of frauds applicable to financial institutions. FEI Co v Republic Bank, SE, No 268700, 2006 WL 2313612 *1 (Mich Ct App, Aug 10, 2006). Third, plaintiff's attempt to rely on an estoppel claim is misplaced. As one court explained:

> Ratification and estoppel are merely creative attempts at skirting the evidentiary burden established by § 566.132(2). As claims to enforce a loan modification against a financial institute, they clearly fall within the ambit of the statute of frauds. Michigan courts have made clear that § 566.132(2) effectuates a broad ban on claims against financial institutions to enforce promises regarding loan modifications. . . Plaintiff may not circumvent the statute of frauds by framing his claims in an inventive way.

Vittands, 2012 WL 1696708 at * 4.

Overall, plaintiff's claims are based on an alleged promise or representation regarding a loan modification. As such, they fall squarely within the statute of frauds, as courts in this district have concluded. See Jarbo v BAC Home Loan Servicing, 2010 WL 5173825 (E.D. Mich. Dec 15, 2010) (holding that the plain language of Michigan's statute of frauds precluded the plaintiffs from bringing claims alleging the breach of an unwritten promise to modify or delay repayment of their mortgage loans); Williams v JP Morgan Mortgage Acquisition Corp., 2010 WL 1052356 (E.D. Mich, Mar 19, 2010) (holding that plaintiffs' claims based on defendants' alleged promise that it would modify

13

the loan on the plaintiffs' property and delay a foreclosure sale during the loan modification process were barred by § 566.132(2) because they had no writing signed by the defendant, promising to modify the plaintiffs' loan or delay the foreclosure); Ajami v IndyMac Mortg Servs, 2009 WL 3874680 (E.D. Mich. Nov 13, 2009) (granting motion to dismiss plaintiff's claims based on an alleged promise of a loan modification and short sale because they were barred by the statute of frauds)

### 2. Fraud/Misrepresentation Claims

Defendants also argue that plaintiff's fraud/misrepresentation claims are subject to dismissal for failure to state a claim. The Court agrees.

First, to the extent plaintiff is alleging defects in the foreclosure proceedings, the complaint falls short. In paragraph 21 of the complaint, plaintiff alleges that the sale should be set aside because defendants "fail[ed] to deliver proper notice and follow proper procedures." However, plaintiff does not allege how defendants "fail[ed] to deliver proper notice and follow proper procedures." These conclusory allegations are insufficient to withstand a motion for 12(b)(6). See Iqbal, 129 S. Ct. at 1949. Moreover, the documents of record show that there was proper notice. Specifically, as required by M.C.L. § 600.3208, Chase published the notice of foreclosure sale in the Detroit Legal News for four consecutive weeks on August 3, August 10, August 17, and August 24, 2010, and posted the notice of foreclosure sale on the property on August 5, 2010. As required by M.C.L. § 600.3205, Chase sent plaintiff a written notice dated July 6, 2010, including the reason for default and amount due and owing; (b) the contact information for the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer; and (c) a statement of the borrowers' rights.

Thus, plaintiff's claim there was no proper notice and/or that defendants failed to follow proper procedure fails to state a claim.

Second, as to a fraud claim, Fed. R. Civ. P. 9(b). requires fraud to be plead with particularity. To meet the particularity requirements of Rule 9(b), the plaintiff must "specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 569-570 (6th Cir. 2008). These requirements have been interpreted to require that a plaintiff "allege the time, place, and content of the alleged misrepresentations on which [the plaintiff] relied; the fraudulent scheme, the fraudulent intent of the defendants and the injury resulting from the fraud." Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's pleadings must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Ass'n of Cleveland Fire Firefighters, 502 F.3d at 548 (quoting Bell Atlantic, 127 S.Ct. at 1964-65).

To establish fraud under Michigan law, plaintiff must demonstrate that "(1) defendant made a material representation; (2) the representation was false; (3) when defendant made the representation , the defendant knew it was false, or made it recklessly , without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) plaintiff acted in reliance upon it; and (6) plaintiff suffered damages." Cummins v. Robinson Twp, 283 Mich. App. 677, 695-96 (2009). Additionally, "a promise regarding the future cannot form the basis of a misrepresentation claim." Forge v. Smith, 458 Mich. 198,

212, 580 N.W.2d 876, 884 (1998).

A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false representation in such a manner that the injury suffered by that party injures to the benefit of the party who made the representation." Unibar Maint. Serv., Inc. v. Saigh, 283 Mich. App. 609 (Mich. Ct. App. 2009). For innocent misrepresentation, a plaintiff need not show that the defendant had a fraudulent purpose or intent on the defendant's behalf, or even that the defendant knew the representation was false. Id. "A claim for negligent misrepresentation requires [a] plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."

The complaint contains little detail about who made the representations and when the representations were made. From the allegations in the complaint, it is only apparent that the representations were made sometime in 2010. Plaintiff also does not indicate who at Chase or Freddie Mac made the representations. See Complaint ¶¶12-18, 21.2. Plaintiff also has not alleged how defendants knew that false representations were being made. This is also fatal to a fraud claim. Plaintiff also does not indicate how he relied on defendants' alleged representations

Rather, plaintiff states that "Defendant Chase…made false and misleading statements…[and a]s a direct and proximate result of Defendants false and misleading statement…Plaintiff may suffer loss of ownership of his property, court costs, and attorney fees." See Complaint ¶¶ 20-21. This is nothing more than a formulaic recitation of the elements of a misrepresentation claim which is insufficient to state a claim for fraud or misrepresentation.

## V. Conclusion

For the reasons stated above, plaintiff has not stated a plausible claim for relief against defendants relating to defects in his mortgage and the foreclosure proceedings. Accordingly, defendants' motion to dismiss is GRANTED.  This case is DISMISSED.

SO ORDERED.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated:  July 9, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 9, 2013, by electronic and/or ordinary mail.

      S/Sakne Chami
      Case Manager, (313) 234-5160